Please all rise. Here ye, here ye, this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Donald C. Fossey is presiding. Thank you. Please be seated. All right. Good morning, Mr. Marshall. Would you call the first case on the court's docket, please? Yes, sir. Your Honor, the first case on the docket is warranted 2-021-0034, Samuel Sleepin, Chapter 7, Trustee. The defense lawsuit is the same as the man that Paul Keene is a particular appellant. He develops Fargo Bank's multi-aircraft, responding to the duty. Arguing for the appellant, Mr. Alan Goodman. Arguing for the appellant, Mr. Goodman, on behalf of the appellant. You may proceed. May it please the Court. My name is Adam Goodman. My client's name is Samuel Sweet. Mr. Sweet is what's referred to by the Department of Justice and its U.S. Trustees Program as a private or panel trustee. He's not an employee of the United States, but he's a part-time federal government official nonetheless. And he derives his authority from an appointment by the United States Trustee's Office in Detroit. Mr. Nugent, you had said in the trial court that the interests of Mr. Sweet are antagonistic to those of the Nugents who you'd previously represented. So why are you representing Mr. Sweet now, if your former client's interests were antagonistic to his? Right. Well, that was one of the questions we were asked to address ahead of time. And their interests are not continuously antagonistic. Their interests were antagonistic for a moment in that Mr. Sweet, acting under the aegis of the Justice Department, took the 1401 petition's prosecution away from the winds. And that is the only sentence in which their interests are antagonistic. And therefore, I respectfully suggest that there is nothing in the Illinois Rules of Professional Conduct, the Common Law Candidates of Ethics, or anything else, that prevents the same counsel from representing both the original litigant, who was a bankrupt, as well as the panel or private trustee as successor to the original litigant. I can further tell you, just as a matter of practice, that I've had the honor of working with four panel trustees in the Northern District of Illinois, one of whom is now deceased, but who've been in our office over the years. And this happens every day. Mr. Goodman, can you clarify one matter? And whose response or whose behalf was the response to Will Farnham's petition to dismiss the new and second amended petition filed on September 24, 2020? Who filed it? And whose behalf was it? I filed it on behalf of Mr. Sweet. But that wasn't set forth in the motion, was it? Right. Well, that was a question of timing. We had simultaneously petitioned to replace Mr. Sweet as the petitioner. We asked Judge Rome to do that. And we had also asked Judge Rome to stay the briefing of that motion to dismiss, pending the resolution of that. So you could go back to the bankruptcy court and reopen it for the purpose of proceeding with the 214.01? Right. There's a multistage process, and that was one piece of the process. So I engaged a lawyer in Detroit, or perhaps a suburb of Detroit. He petitioned. He was a member of the Bar of the Eastern District of Michigan. He asked that the bankruptcy be reopened. Mr. Sweet was then reappointed. The Michigan council spoke with Mr. Sweet. Perhaps Mr. Sweet also spoke to Wells Fargo's council. I'm not privy to that. Then Mr. Sweet decided to take over the case. Mr. Sweet interviewed me, solicited a CV or resume or brochure or something from our firm. Then Mr. Sweet went to the panel trustee in Detroit. Excuse me, he is the panel trustee. The United States trustee's office in Detroit and asked them to approve our retention because they don't normally hire attorneys in Chicago and they didn't have a standing list. I think you've adequately explained it. So getting to the really overarching question, as you know, the trial judge found that latches applied in this case, correct? Initially, Judge Rome granted Wells Fargo's motion to dismiss on both estoppel and latches grounds. We filed a motion for reconsideration, and he changed his mind with regard to latches but did not change his mind with regard to estoppel. Our position on appeal is that the same logic should apply to both. The reason why Judge Rome changed his mind was that we confronted him with the same holdings that are cited on page 5 of our appellant brief. So you read that as he changed from latches to estoppel, not estoppel to latches. No. He originally agreed with them on both prongs of their argument. He raised a two-prong argument. The briefing here and the decision process here, I think everyone involved would acknowledge, was less than perfect because of the simultaneous attempt to substitute personnel. Setting that, all the administrative personnel issues aside, did you say he ruled on estoppel only and not latches? No. He granted the motion to dismiss and agreed with, there's a transcript that's in the record, He agreed with Wells Fargo about both latches and estoppel. We then filed a timely motion for reconsideration. He granted the motion for reconsideration and changed his mind with regard to latches but reaffirmed his earlier decision with regard to judicial estoppel. And with regard to both latches and judicial estoppel, the argument in the motion for reconsideration was grounded in the same two cases that we principally rely upon in our appellant brief. The Seventh Circuit's decision in BISEC, B-I-E-S-E-K, 440 F. 3rd 410 at 413, and a Federal Bankruptcy Court case out of Houston, in Ray Miller, 347 B.R. 48 at 5354. These are both quoted on pages 5 and 6. Let me ask you this. We're familiar with the record. The trial court said that they knew about it, referring to the unions. They knew about it, and it would be silly to believe otherwise, especially given nothing, no affidavit, nothing indicating that they didn't know about it. So latches applies. And the court said it's a classic or a textbook case of latches. And the record, in particular the bankruptcy record, doesn't that lead to such an inference that the unions left their residence, abandoned their residence, and then said in their bankruptcy filing that they had no real estate assets. So in 2010, when they filed for bankruptcy in May of 2010, they knew about the default. They knew that they no longer had an interest in real estate. It was over back in 2010, wasn't it? If you accept that inference, that they were telling the truth, which a trial court is entitled to do, correct? Well, the WINS, the trial court is entitled to derive reasonable inferences from written documentation. There was no testimony offered by either side. It was preceded entirely by this. My point is the trial court, the bankruptcy court and the trial court in the State of Illinois, in fact, in that transcript that you filed as an exhibit in a bankruptcy proceeding in Illinois, in federal court, one of your partners represented that client, correct? Where the court said, I'm not allowing you to reopen. You're going to run back to the Illinois courts. I'm not sure what you're referring to. It was one of your partners. I'm not sure what you're referring to. You attach that to one of your pleadings where you said that bankruptcy courts have denied the motion to reopen. Can I ask Justice Burkett's question in a slightly different way? For purposes of our analysis, are you conceding that the Noyens, if I'm mispronouncing if they were the plaintiffs, if you will, that they would be subject to latches after the Kusner's case? Would you concede that? I haven't given that any thought. But I would say at first blush, no, that they might be susceptible to latches down the road, like for example a summary judge motion attacking the 14-O petition or an affirmative defense as played to a counterclaim. But one cannot derive the inference that was derived in Kusner's. Kusner's involved defects in a summons that in cases of that genre from this court and elsewhere, involved defects in a summons where there was no dispute that the summons was handed to the defendant. It's just the summons wasn't properly stamped or signed or addressed. Here the Noyens were served by publication. So they may have known about the house. They undoubtedly lived in it and moved out of it. They may have known about the loan, but they didn't necessarily know about the foreclosure. Let me just say this. For purposes of our discussion, or at least as it relates to me, I would like you to presume that the Noyens are subject to, if not estoppel, at least latches. So I'd like to focus on how Mr. Sweet gets to proceed in that context, having reopened the bankruptcy. Sure. Well, that is the idea that the filing of the bankruptcy creates a fork in the road. Imagine a Y, the letter Y. So the filing of the bankruptcy caused the winds to go down the left branch of the Y for a number of years. And for a number of years, they filed for bankruptcy. They got a discharge. Nothing happened. Then in 2017, I believe, they retained a different lawyer who filed a 1401 petition. We then took over the 1401 petition. There were proceedings, including in this court. Judge Rome dismissed the 1401 petition on other grounds. This court reversed. Then on remand, Wells Fargo brought up these latches and judicial estoppel arguments. But Mr. Sweet's branch of the Y, the right branch of the Y, hadn't started yet because the winds hadn't disclosed the existence of the claim or the possible 1401 petition or the counterclaims that might be brought if the 1401 petition was successful. So when Wells Fargo pointed this out and Mr. Sweet replaced the winds, we go back to the pivot, and then Mr. Sweet goes up the other branch of the Y. And he can't possibly be affected by anything that the winds did or didn't do post-petition. So you're not saying that the trustee in bankruptcy could never, as a matter of law, be subject to the defense of latches. You're saying under the facts of this case, latches would not lie. Is that exactly what you're saying? Correct. If the trustee delayed himself or if the trustee, you know, latches could be found in a wide variety of circumstances based on post-petition conduct by the trustee or based on pre-petition conduct by the debtors. But it can't be found based on post-petition conduct by the debtors. Because the debtors, we agree with what I agree, representing Mr. Sweet today, that the winds should not have prosecuted the petition. They did not have standing to do so. Mr. Sweet was the person who had standing to do so. And so Mr. Sweet is bound by what the debtors did pre-petition, but he is not bound, he's not in any way affected as a matter of just the plain language of the Federal Bankruptcy Code. He's not affected by anything that the debtors did post-petition with regard to claims of liabilities that they did not own or control post-petition. I understand that point. Let me ask you, Chip Gears here. Obviously, there's a 214-01 motion that was filed. Okay. And is it your position that all necessary jurisdictional parties were served? Right. And that they have to be served. Right. Well, at the time the petition was filed, the 14-01 statute and regulations did not require, you know, it was amended in 2018 after the petition was filed, to require that you have to name subsequent owners and subsequent lenders, that those rules were not in effect at the time the petition was filed in 2017. Wells Fargo did not perform any retroactivity analysis, but even if we assume for purposes of discussion that it's appropriate to apply the current rules to something that happened a year or so before those rules were passed, there is no point under the current, under the factual posture of this case, because any claims or interests of those parties, any subsequent owner, any subsequent lender, any tenant, if there are any properties being rented, there is no possibility that Mr. Sweet or Wells Fargo could have any claims against those people because of the statute of repose. Here's what's going to happen if the court wins, if the court agrees with me, if I win here, and the 14-01 petition is ultimately granted. Mr. Sweet is going to file an answer to the foreclosure complaint, and he's going to file a counterclaim, all right? But that counterclaim is not going to enable him to retrieve the house. The statute of repose, it's too late for him to do that. So if the only thing that counterclaim can seek is money from Wells Fargo based on the argument that Wells Fargo damaged the bankruptcy estate and violated the WINS procedural due process rights by not giving them meaningful notice of the foreclosure, and had they been given particularized hand service, let me finish your sentence. Had they been given particularized hand service, there would have been opportunities to potentially refinance, short sell, sell at a profit, and the bankruptcy estate, the creditors of the WINS, would have benefited as a result. That presumes that the Nuyens did not know, right? I mean, it goes back to a hearing, and you said that they damaged the Nuyens. That might be correct. That might be defense that Wells Fargo could raise to this counterclaim after the 1401 petition is granted, that the counterclaim has much to do about nothing because the WINS knew all along or had the opportunity to know all along, and that is pre-petition in part, and therefore the trustee is bound by that. I did not have the opportunity to address one of the four homework questions. Would you like me to briefly? Yeah, go ahead and finish your thought. Okay. So the third question that we were asked to address ahead of time was, is the trustee's position in this Section 214.01 petition proceeding and underlying foreclosure adverse to the Nuyens? And the answer is that it isn't adverse because the WINS no longer have an interest in the 1401 petition, but it was adverse in the sense that Mr. Sweet took it away from the WINS. But more generally, the answer to this question depends on one's political philosophy. For example, are regulators or police adverse to the regulated or policed? Some people might say yes. Some people might say no, that it's just the way the system is designed. But they clearly have adversarial roles in the bankruptcy process where Mr. Sweet is tasked with regulating the behavior of his charges, including the WINS. All right. Thank you, Mr. Goodman. You'll have time to address the Court on rebuttal. Ms. Myers, you may proceed on behalf of Wolfpark. Good morning, Your Honors. Can you hear me all right with this microphone? Yes. Okay. Good morning, and may it please the Court. My name is Claire Myers, and I represent the appellee, Wells Fargo. Your Honor, this Court should affirm this case is straightforward. As has been suggested, Kuzmir applies and is dispositive. Latches solves this case, and the substitution of the trustee, Sweet, does nothing to change this. What about his point that latches could apply, but here it can't apply when it's close judgment, that Sweet would have nothing to do with what went on before that? Your Honor, it is well established in Illinois that a trustee steps into the shoes of the debtor and is subject to all the same defenses. Therefore, both latches and judicial estoppel apply to the trustee. Are there cases saying that post-discharge? And I get that that's absolutely the law of pre-discharge, but post-discharge is not at least an argument that that might be a different analysis. That is a good question, Your Honor. I think the cases that have been cited that address post-discharge. The Sue case, for example. The Sue case, the Tao case, the Miller case. All those cases represent different situations than that here. In those cases, we were looking at a debtor who tried to hide assets from the creditors by hiding those claims from the trustee. And in those cases, the trustee independently discovered the claims that were at issue, the assets that were at issue, reopened the bankruptcy, and took over the prosecution of those claims to protect the interests of the creditors from the debtors. That is clearly not the case here. As has been discussed earlier this morning, the interests of the Nguyen's and the trustee are aligned. The Nguyen's reopened the bankruptcy case on their own. They discussed with the trustee, as they've said in their briefing, they discussed with the trustee that the trustee would take over the petition from them. And throughout all of these proceedings have been working in tandem. What about his argument that he represents the creditors? He doesn't represent the Nguyen's. Right. Your Honor, the interests of the creditors in this instance, I think I would go back to my answer to the question that Justice Brennan asked, that the cases that are cited in support of that argument are just not the situation that's represented here. The interests of the creditors are not adverse to the interests of the Nguyen's in this instance. And I think I would also add, and this is responsive to one of Your Honor's questions, that there's no effective relief for the creditors in this situation. Mr. Sweet suggests that he seeks money damages, but money damages are unavailable in a 214-01 petition. So he would be unable to recoup those for the creditors. The only effective remedy for, the only remedy for a 214-01 petition is the voiding of the judgment, which would mean the unwinding of the foreclosure. And as acknowledged, that sort of relief is impossible in this situation. So you're saying he's asking for relief that the Court can't grant, because the Court cannot grant a monetary relief by vacating the judgment. Is that your position? That's correct, Your Honor. In this instance, even if Sweet wins and the State is able to somehow retake the house, they would end up in the same position as the Nguyen's before the foreclosure, that is with over almost $150,000 owed on the mortgage. Well, perhaps in the 214-01 would be a motion to vacate the judgment. So in that technical sense, they wouldn't be able to grant monetary relief. But if they vacate the judgment, they'll start over, and then they could seek this relief, couldn't they? I'm not sure about that. So why are you saying it's a useless act, then? Pardon? Why are you saying that basically it's a useless act to vacate the judgment? Your Honor, I would respond that the relief they seek is not available. And why is that? Even if the judgment is vacated, Your Honor, retaking the house would present difficulties. Well, I think he considered that Nguyen's were not going to get the house back. Of course. They're asking for potential monetary damages. That's true, Your Honor, but that has not been argued in this case or briefed. Okay. What's your position on whether or not they had to serve all necessary jurisdictional parties in order to have jurisdiction to vacate the judgment? Thank you for your question, Your Honor, because I wanted to clarify something that was represented earlier this morning. The petition that we're referring to in which the petition here that is operative in this case is the second amended petition, which was filed in 2019 after the changes had been made to the statute to require all necessary parties to be named. The petition did not name all necessary parties, which would include, for instance, the current owners of the house, who clearly have a present and substantial interest in the matter. So all necessary parties were not served? Did the court have jurisdiction to vacate? Your Honor, I would say that the petition would be deficient and, therefore, dismissal would be proper. Can I ask you to go back to the suitcase for a second and those line-up cases? So I recognize that the factual issue or the facts underlying those cases are different. It's obviously so. But I'm more focused on the rationale as it relates specifically to the latches question and specifically this idea that the trustee is representing post-discharge the creditors and has quite a park of whatever the actual motivations are. We have no evidence of that, really. But what we have is a trustee saying, oh, I just found out that there might be this cause of action that could potentially recover monies and then I could distribute those monies to creditors who will be really surprised to get money. But nevertheless, how are you distinguishing those cases other than while they're different fact patterns? From a rationale standpoint, what is it that we should be focusing on to depart from those cases if we find them otherwise persuasive? That was a good question, Your Honor. I think the general rule, as I understand it, is that the trustee steps into the shoes of the debtor and therefore all defenses that could be applied to the debtor are applicable to the trustee. And I think those cases would represent a departure from that general rule given the facts presented. That brings me to my earlier question, though. Does that rule apply with equal force post-discharge? Your Honor, I'm not sure if there's a general rule that would apply. I'm not sure either. I was just hoping you would tell me. But that's okay. You can continue your argument. Thank you. No, thank you. And I think one thing that I would add to that is that this Court can affirm on any ground presented in the record. And so even if this Court were to find that latches and estoppel are not applicable, which our position is that they are, the Court can also affirm on the grounds that the petition is deficient. If there are no further questions, we would ask this Court to affirm the judgment below. Now, when you say the petition is deficient, you're not saying on its face. You're saying because of the lack of service? Because of the failure to meet all necessary priorities. Serve all necessary priorities. That's correct, Your Honor. May I take that? No, thank you. All right. Thank you very much, Your Honor. All right. Thank you very much. All right, Mr. Goodman, you may proceed with your rebuttal argument. Excuse me. I have three things that Ms. Myers brought up, that the Court brought up with Ms. Myers that I'd like to briefly address. The first is the Wins, and I was representing the Wins at the time, tried to reopen the bankruptcy in the Eastern District of Michigan to see if the trustee would abandon the claim back to them. And the trustee chose not to do so. And that was adversarial. That's the trustee taking the claim away from the Wins. Had the trustee expressed a disinterest in taking the claim away from the Wins, the claim would have reverted to the Wins, and perhaps I would be still representing the Wins, and perhaps I would have lost on laches grounds and would not have the present appeal. But that's not what happened. Mr. Sweet replaced the Wins, and that, I think, demonstrates that this is or was arm's-length adversarial behavior, and the sort of tenor of the appellee brief suggesting that Mr. Sweet and the Wins are acting in cahoots is unfounded. Second, the remedy here, I said this in my first portion of the argument, and I'll restate it again. The remedy here, if the 1401 is successful, is that we get to answer. And if we answer, we can also counterclaim. And the counterclaiming in an answer allows Mr. Sweet to bring claims that would otherwise be time-barred, because counterclaims are never time-barred in Illinois. And one of those counterclaims or those counterclaims, without regard to what their legal theories underlie them, those counterclaims would be seeking money. Those counterclaims would not be seeking return of the house, because return of the house... Money for what? Money for the alleged violation of the Wins' procedural due process rights, because the Wins were not given particularized notice, such as hand service. But they actually did know that they no longer had an interest in that house, because they said so in their filings in the bankruptcy court. Well... Right? Not exactly. Why? Why not? You know, you said in your brief that there's nothing in the record that would allow for an inference that they knew. They disclosed the fact that they have the... I believe they disclosed the fact that they owe Wells Fargo money, but they did not in any way identify the foreclosure lawsuit that had been filed against them in DuPage County, presumably because they didn't know about it. Well, they said they had no real estate assets. Right, that was inaccurate. If it's inaccurate, why isn't it a lie? Or it's the truth, because they knew. It's one or the other. Well... They either knew and told the truth in their bankruptcy filing. Right? Or they lied. Well, it isn't necessarily a lie. Why not? Well, it could be carelessness on the lawyer's part. It could be carelessness on their part. They could have not told the lawyer. The lawyer could have made a mistake. But, yeah, it's... You said there's nothing in the record. My point is you said there's nothing in the record indicating that DeWinns knew of the existence of the foreclosure.  There is information in the record. Your Honor may be correct in drawing that inference, but Your Honor is not unassailably correct to the extent that it would be appropriate to draw that inference in response to a motion to dismiss. And you contended in the trial court that there should be some evidence on this point, correct? Among other things, yeah. But you might be right that there... I just rattled off several other alternative explanations, and we don't know which one is correct. The last point I'd like to address is that... is this issue about the fact that the petition did not name the subsequent owner or owners and the subsequent lender or lenders or conceivable tenants. First of all, as I pointed out earlier and as I pointed out in the briefs, the normal rule is that amended pleadings relate back to the date of filing, for example, for statute of limitations purposes, relate back to the date of filing of the original pleading, particularly when they don't add new parties. And at the time the petition was filed in 2017, there was not... these rules hadn't been passed yet. If we don't agree with your position on that, and we get to the merits, and they have been served on the necessary jurisdiction of parties, where does that leave the viability of your motion? Well, there's three reasons why that shouldn't be a concern. Number one is waiver and invited error. As pointed out in the brief and the pages and the records are cited, Judge Rome insisted that we file the exact same word-for-word petition. Wells Fargo did not object that we needed to add additional parties, and therefore there's arguably waiver or invited error. Number two is this can effortlessly be fixed. Were the court to agree or the trial court to require it, we could do a title search, we could find these people's names and addresses, we could file an amended paperwork, and we could serve them in a few weeks. But lastly is, and this is empiric or pointless, because, as I just conceded, the only remedy available to us, if the 1401 motion is granted, is to answer and counterclaim for money. We cannot seek return of the house because of the seven-year statute proposed. Therefore, the subsequent owners, lenders, tenants, if there are any tenants, should not tear one wit whether we succeed in getting money from Wells Fargo or whether we fail in getting money from Wells Fargo. Indeed, were I required by this Court or the trial court or my own interpretation of the rules to add these parties in a prior pleading, or had Ms. Shereves, my predecessor, added these parties in a prior pleading, they would have then turned around and immediately dismissed them because they add nothing and have no interest in the proceeding, and in fact would have in all likelihood complained that they shouldn't have been in the case. But had they physically appeared, paid an appearance fee, they could have rightly complained that they were unnecessary and perhaps even being harassed. For the foregoing reasons as well as those provided in the briefs, we would respectfully ask that the Court reverse and that the cause be reinstated and that Wells Fargo be directed to either answer or acquiesce to the 1401. One of the reasons I think for the amendment to require all necessary parties in order to establish jurisdiction is that the current owners do have an interest because just for the sake of watching what takes place in the litigation to guard against a cloud on the title of their home. In other words, do we have the authority to ignore a jurisdiction or requirement? I understand what you're saying, and one could say that even though the statute proposed prevents Mr. Sweet from seeking physical restitution or possession of the home, that the reopening of a now 13-year-old or 12-year-old foreclosure might cause a title underwriter or a potential lender to refinance or something like that. Presumably the lender would rely on the title. It might cause someone to look askance at the insuring or lending against the title. Trying to refinance. Right, insuring or lending. I completely understand that. And that is a colorable policy argument. I would concede that. What I'm not sure I would concede is whether our having to add these parties and then turn around and immediately dismiss them would make the situation better or worse for the perspective or benefit of the subsequent owners, lenders, tenants, whatever. I understand exactly what Your Honor is getting at. I'm just not sure that doing this wouldn't actually be counterproductive vis-a-vis those parties' hypothetical or possible interest. The point is jurisdictional requirements cannot be ignored by either a trial court or an indigent court. I would agree with that in the abstract. As alluded to moments ago, there are other reasons why one could conclude they are or are not jurisdictional. Thank you. Will you make a comment? I do not. Thank you. All right. Thank you very much, Mr. Daly. All right. That will conclude the arguments in this case. I'd like to thank all counsel for the quality of their arguments and what is the most interesting case. We will, of course, take the matter under advisement, and a written decision will be issued in due course.